# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By James Burrell at 1:16 pm, Oct 17, 2017*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR417-095 |
| | ) | |
| ERNEST TREMAINE JACKSON | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Defendant Ernest Jackson has filed a suppression motion asserting that state law enforcement officers violated his Fourth Amendment rights by conducting a warrantless search of his vehicle. The undisputed facts do not support this contention.[1]

On September 20, 2016, the manager of a Wendy's restaurant in Richmond Hill, Georgia notified the police that a black male had just passed a counterfeit $50 bill at her business. She informed the investigating officer that managers at a nearby Arby's and a Taco Bell had warned her that a black male riding in a white Dodge Charger had tried to buy food at their restaurants using a phony $50. When that

---

[1] The Court scheduled an evidentiary hearing on Jackson's motion for September 26, 2017, but at that hearing Jackson stipulated to the facts set forth in the police reports attached to his and the Government's respective briefs. As those reports set out the facts in some detail, the Court determined that no other evidence or testimony was needed to resolve the Fourth Amendment issue presented. Neither party disputed that finding or sought to introduce any additional evidence at the hearing.

individual came into the Wendy's and attempted to do the same thing, the manager told him the bill was fake, kept it in her possession, and picked up the phone to call 911. Immediately, the black male rushed out of the restaurant and drove away. The officer took custody of the $50 bill, which was obviously counterfeit.

The investigating officer then spoke with the Arby's manager, who had used her cell phone to take a photograph of the suspect as he entered the passenger side of the white Dodge Charger. That photo captured the Georgia license plate on the vehicle, RBZ4073. Later that day a police detective, Terry Getsch, obtained video surveillance footage from the Wendy's and Taco Bell restaurants that depicted the same, slender-built black male.

Det. Getsch later spoke with the managers of two fast-food restaurants in Darien, Georgia, who stated that several days after September 20, 2016, the same "skinny" black male subject had attempted to pass counterfeit money at their restaurants. The detective further ran a check on the getaway car's licence plate, which revealed that it was registered to Ernest Jackson. Although Jackson's physical description and photograph did not match that of the subject who had

gone into the various restaurants with the counterfeit money, the detective determined that Jackson had an extensive criminal history, including Georgia convictions for armed robbery, hijacking a motor vehicle, aggravated assault, willful obstruction of a law enforcement officer, and willful possession of contraband by an inmate.  Doc. 32-2 at 11.

On October 11, 2016, at 3:27 p.m., the manager of the Richmond Hill Taco Bell telephoned the police and reported that the same subjects, riding in the same white Dodge Charger, had just left her restaurant after presenting another fake $50 bill, which she had seized.  Det. Getsch went to the Taco Bell, confirmed that the money was indeed counterfeit, and requested a BOLO for the white Dodge Charger bearing license plate RBZ4073.  Almost immediately, a Liberty County Sheriff's deputy, Jeffrey Hall, spotted the vehicle and began to follow it as it approached Hinesville, Georgia.  After backup law enforcement vehicles arrived, Hall activated his blue lights.  When the Charger pulled into a restaurant parking lot, the police vehicles boxed it in.

Deputy Hall approached the Charger with his weapon drawn and encountered the driver, defendant Ernest Jackson.  Jackson appeared to

be "highly nervous" and kept his vehicle in drive, suggesting to the officer that he was looking for a way to flee.  Doc. 32-3 at 3.  The deputy ordered both Jackson and his passenger to show their hands.  Officers then removed both vehicle occupants, handcuffed them, and secured them in patrol vehicles.  *Id.*  During this encounter, the officers observed an open container of alcohol inside the vehicle's passenger compartment. A narcotics detection dog, which arrived on scene some 10 minutes after the stop, alerted to the presence of drugs in the vehicle.  Upon their initial search of the Charger, officers retrieved a 9mm pistol from under the driver's seat.  They charged Jackson with the unlawful possession of that weapon due to his felony record.

Jackson concedes that the initial stop of his vehicle was lawful. Doc. 21 at 3.  He further concedes that officers had legitimate grounds to suspect the vehicle's *passenger* of passing counterfeit money.  *Id.* at 4. He asserts, however, that the police subjected him to an unconstitutionally "prolonged detention" while they looked for a reason to arrest him.  *Id.*  He also contends that it was improper for them to conduct a warrantless search of his vehicle, for "there was no probable

4

cause to believe the vehicle contained any evidence of the offense for the arrest." *Id.* at 5.  These arguments are just plain wrong.[2]

Clearly, the careful investigation conducted by law enforcement prior to the stop furnished ample probable cause to believe that *both* occupants of the Dodge Charger were engaged in counterfeiting.  Three times on September 20, 2016 an individual riding as a passenger in the Dodge Charger entered fast-food restaurants in Richmond Hill and tried to buy food using an obviously counterfeit $50 bill.  When he was told that the money was phony and turned away, he tried his luck at yet another nearby establishment.  On his third attempt, the manager seized the fake $50 bill and started to call 911, whereupon he hurried back to the Dodge Charger and fled the scene.  Several days later, these same individuals endeavored to pass more counterfeit $50 bills at fast-food restaurants in Darien, Georgia.  Under these circumstances, the driver of

---

[2]  Defendant's prolonged-detention argument is not borne out, even by his brief.  He points out a traffic stop "may not last longer than necessary . . . , *unless there is a reasonable articulable suspicion of other illegal activity*."   Doc. 21 at 3 (emphasis added).  As the factual recitation above makes clear, this was no routine traffic stop.  The identification of the Charger was based on witness testimony and photographs and video recordings of the alleged counterfeiters.   Since police had such "a reasonable articulable suspicion of other illegal activity," his reference to the Fourth Amendment time limit on a "routine traffic investigation" is simply inapplicable.

the Charger -- *whoever* he was -- could reasonably be assumed to be actively assisting in the passing of counterfeit money.

While law enforcement did not know the identity of the skinny black male at this point, they determined that the Dodge Charger was registered to Ernest Jackson, who had an extensive felony record involving crimes of extreme violence.  It was therefore reasonable for the officers to infer that Jackson was not only the likely getaway driver but to fear, given his criminal history, that he might pose a threat to their safety if apprehended.  When alerted on October 11 that the same individuals, driving the same white Charger, had returned to a Richmond Hill fast-food restaurant with another counterfeit $50, the officers almost immediately located and stopped that vehicle.

Just as the officers reasonably suspected, the driver turned out to be Ernest Jackson, who was exceedingly nervous and gave every indication that he was looking for a way out of his situation.  The totality of this evidence -- the continued use of Jackson's car to facilitate the passing of counterfeit notes, his long history of criminality, the presence of a known counterfeiter in his vehicle at the time of the stop, and his behavior when first approached -- clearly gave the officers probable cause

to believe that he was part of the counterfeiting operation.  To suggest that the officers were struggling to find some basis for arresting him is balderdash.

The fact that Jackson was not told that he was being arrested for counterfeiting, or that his initial charge was stated to be for unlawful possession of a firearm, is of no constitutional significance.  An arrest is proper if there are objective facts establishing probable cause for that arrest, even if the arresting officer stated that he was arresting the defendant for another offense for which he lacked probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (an officer's "subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause."); *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."); *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) ("[I]f the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as a basis for the

7

arrest, a different offense as to which probable cause was lacking."). Because the officers had probable cause to arrest defendant for counterfeiting, it matters not that they did not state this as a basis for his arrest.

The law is well settled that law enforcement officers who lawfully stop a motor vehicle may proceed to conduct a warrantless search of that vehicle where they have probable cause to believe that it contains evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 153 (1925). This "automobile exception" to the Fourth Amendment "does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.'" *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (*per curiam*) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (*per curiam*)). Indeed, "'when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody.'" *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990) (quoting *Michigan v. Thomas*, 458 U.S. 259,

8

261 (1982)).    Probable cause deals with probabilities, "'not hard certainties.'"    *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citation omitted).    Nor does the level of probability impose a "more likely true than false" standard.  *Id.*; *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (the probable cause determination "does not require the resolution of conflicting evidence that reasonable-doubt or even a preponderance standard demands"); *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) ("the requisite fair probability is something more than bare suspicion but need not reach the fifty percent mark"); *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987) (probable cause does not require a more-probable-than-not showing).    Rather, probable cause requires only that the available facts permit a person of "reasonable caution" to reach the "common-sense" conclusion, *Brown*, 460 U.S. at 742, that there is a "fair probability" evidence of a crime is located in the place to be searched.  *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983), *United States v. Lewis*, 2016 WL 7668450 at * 2 (S.D. Ga. Nov. 21, 2016).

Did such a fair probability exist in this case?  Yes, it did.  Over the course of several weeks the Dodge Charger had been used repeatedly by two individuals in their scheme to pass counterfeit $50 bills at various

fast-food restaurants.  Law enforcement officers stopped the vehicle just minutes after the vehicle occupants had made another such attempt. The two occupants turned out to be the very subjects who had been identified by the officers as the suspected counterfeiters.  Those who regularly traffic in counterfeit currency *using the same vehicle each time* are very likely to have evidence of their criminal activity inside the vehicle -- be it phony money, receipts reflecting their recent purchases, fast-food wrappers, or other items acquired using counterfeit currency. While it is conceivable that the two counterfeiters were so cautious or fastidious as to never leave such evidence in their getaway vehicle, probable cause deals in probabilities, not certainties, and it "does not demand any showing that [the target vehicle contains criminal evidence] is correct or more likely true than false." *Brown*, 460 U.S. at 742.

But even if it is assumed that the officer's belief that the vehicle contained criminal evidence remained a mere (though legitimate) suspicion and never rose to the level of probable cause, the officers were nevertheless entitled to proceed with its warrantless search.  The Supreme Court has held that it is permissible for officers to conduct a search of a vehicle incident to the arrest of its occupants where "it is

*reasonable to believe* the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009) (emphasis added). While the Court did not flesh out the reasonable-to-believe standard, a number of appellate courts have concluded that it appears to require a lesser quantum of suspicion than probable cause, *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014); *United States v. Donahue*, 764 F.3d 293, 299 n. 6 (3d Cir. 2014); *United States v. Rogers*, 656 F.3d 1023, 1028 n. 5 (9th Cir. 2011), and "probably is akin to the 'reasonable suspicion' standard required to justify a *Terry* search." *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010). Certainly, it was *reasonable* for the officers in this case to believe that the Dodge Charger contained evidence of counterfeiting, and it was that offense that served as the basis for the passenger's arrest (and for which the officer's had probable cause to arrest Jackson as well, even though they did not immediately announce that as the basis for his arrest). Thus, assuming that probable cause was lacking and the automobile exception to the warrant requirement does not apply, the officers' reasonable belief that the Charger contained evidence of the counterfeiting offense for which the

11

passenger had just been arrested justified the warrantless search of that

vehicle under *Gant*.[3]

The officers were not required to secure a warrant prior to
conducting a search of Jackson's vehicle.  Accordingly, his motion to
suppress the results of that search should be **DENIED**.

This Report and Recommendation (R&R) is submitted to the
district judge assigned to this action, pursuant to 28 U.S.C.
§ 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of
service, any party may file written objections to this R&R with the Court

---

[3]  The fact that a drug-detection dog alerted on Jackson's vehicle likely provides an
additional justification for the search.  As the Government points out, the dog
appears in the dash camera footage approximately ten minutes after the stop.  *See*
doc. 32 at 7; doc. 32, Ex. D at 12:00.  The video does not show the alert, or confirm
that it preceded the search, *id.*, and the police report does not conclusively establish
the sequence of events.  *See* doc. 32-3 at 3.  Jackson, however, does not contest the
legality of the stop, and a lawful seizure is "not transform[ed] . . . into a 'search' for
Fourth Amendment purposes by having a drug-detection dog sniff around the
vehicle."  *United States v. Broadnax*, 2016 WL 852739 at * 2 (S.D. Ga. Mar. 4, 2016)
(citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000); *United States v.
Holloman*, 113 F.3d 192, 194 (11th Cir. 1997)).  The dog's "alert" is sufficient to
establish probable cause for a warrantless search of the car.  *Id.* (citing, *inter alia*,
*United States v. Smith*, 448 F. App'x 936, 939 (11th Cir. 2011); *see also Florida v.
Harris*, 568 U.S. 237 (2013) ("A sniff is up to snuff when it [would make a reasonably
prudent person think that a search would reveal contraband or evidence of a crime].);
*Tamari*, 454 F.3d at 1265 ("We have long recognized that probable cause arises when
a drug-trained canine alerts to drugs." (quotes and cite omitted)).  Jackson points to
no fact which suggests that the drug-dog's alert would not support probable cause to
search his vehicle for the source of that alert.  Assuming that the Government's
chronology is correct, *see* doc. 32 at 7 ("The K-9 officer altered on the vehicle.
Officers *then* donned gloves and began their search . . ." (emphasis added)), the dog's
alert thus provides a third justification for the search.

and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.   11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 17th day of October, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

13